IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FARMAMEDICA, SA                    :

                               :

   v.                 : Civil Action No. DKC 2006-0894

                               :

ANA ELOISA ALFARO DE MARON          :

                               :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this trademark infringement case is the motion of Defendant Ana Eloisa Alfaro de Maron to dismiss for lack of personal jurisdiction. (Paper 13). The issue has been briefed fully and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the court finds that Plaintiff has failed to demonstrate personal jurisdiction over Defendant in this district. Accordingly, Plaintiff Farmamedica S.A. will be directed to notify the court as to whether it seeks transfer to the United States District Court for the Southern District of Florida as an alternative to dismissal of this action for lack of personal jurisdiction.

## I.  Background

Plaintiff, a Guatemalan company, produces a dietary supplement under the name Vital Fuerte. Plaintiff asserts that it has marketed Vital Fuerte throughout Central America since approximately 1965, and in the United States since approximately 1993. Plaintiff claims that its trademark for this product has

been infringed by Defendant's sale of a dietary supplement under the similar mark Super Vital Forte and a similar trade dress. Defendant resides and operates an unincorporated business producing dietary supplements in San Salvador, El Salvador.  Defendant has sold Super Vital Forte to Mr. Horacio Carballo, a resident of Maryland, who is the president of Beauty Botanicals Distributors Inc., a Maryland distributor of supplements and pharmaceutical products that sells supplements including Super Vital Forte. Defendant argues that she has not purposefully availed herself of Maryland law and is not subject to this court's personal jurisdiction, while Plaintiff contends that Defendant's contacts with Maryland, or in the alternative her contacts with the United States as a whole, justify the exercise of personal jurisdiction.

## II.  Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence

relevant to the jurisdictional question. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4ᵗʰ Cir. 2005) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4ᵗʰ Cir. 1989)).  If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *New Wellington*, 416 F.3d at 294. In determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan*, 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

**III. Analysis**

Plaintiff asserts two alternative theories of personal jurisdiction. First, Plaintiff argues that Defendant's purposeful contacts with Maryland are sufficient to justify this court in exercising personal jurisdiction over Defendant. Alternatively, Plaintiff asserts that, if Defendant's contacts with Maryland are not sufficient to justify the exercise of personal jurisdiction, Defendant does not have sufficient contacts with any state to justify the exercise of personal jurisdiction by the courts of general jurisdiction of that state. Plaintiff asserts that if this is the case, Defendant's purposeful contacts with the United States

3

as a whole are sufficient to justify personal jurisdiction under
the Due Process Clause and that personal jurisdiction is thus
possible pursuant to Fed.R.Civ.P. 4(k)(2).   Fed.R.Civ.P. 4(k)
provides:

> (1) Service of a summons or filing a waiver of
> service is effective to establish jurisdiction
> over the person of a defendant
> (A) who could be subjected to the jurisdiction
> of a court of general jurisdiction in the
> state in which the district court is located,
> or . . . .
> (2) If the exercise of jurisdiction is
> consistent with the Constitution and laws of
> the United States, serving a summons or filing
> a waiver of service is also effective, with
> respect to claims arising under federal law,
> to establish personal jurisdiction over the
> person of any defendant who is not subject to
> the jurisdiction of the courts of general
> jurisdiction of any state.

Each argument will be analyzed separately.

**A.  Minimum Contacts with Maryland**

Under Maryland law, a federal district court may exercise
personal jurisdiction over a nonresident defendant "if (1) an
applicable state long-arm statute confers jurisdiction and (2) the
assertion of that jurisdiction is consistent with constitutional
due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199
(4th Cir. 1993).  The Court of Appeals of Maryland has "consistently
held that the purview of the long arm statute is coextensive with
the limits of personal jurisdiction set by the due process clause
of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming
Holding Co.*, 388 Md. 1, 15 (2005).  Yet, courts may not "simply

dispense with analysis under the long-arm statute," but rather, must interpret it "to the limits permitted by the Due Process Clause when [they] can do so consistently with the canons of statutory construction." *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6 (2006).

Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, provides in part:

> (b)  A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1)  Transacts any business or performs any character of work or service in the State;
>
> (2)  Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3)  Causes tortious injury in the State by an act or omission in the State;
>
> (4)  Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; . . .

There is a limiting condition in subsection (a): "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." § 6-103(a).

Plaintiff's opposition relies alternatively on subsections (b)(1) and (b)(2) of section 6-103. Subsection (b)(1) allows a court to exercise personal jurisdiction over a defendant who "transacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Under this subsection, "a nonresident who has never entered the state, either personally or through an agent, may be deemed to have 'transacted business' in the state within the meaning of subsection (b)(1)." *Snyder v. Hampton Indus., Inc.*, 521 F.Supp. 130, 141 (D.Md. 1981), *aff'd*, 758 F.2d 649 (1985). *See also Prince v. Illien Adoptions Int'l, Ltd.*, 806 F.Supp. 1225, 1228 (D.Md. 1992).

With respect to due process, the exercise of personal jurisdiction over a nonresident "depends on whether the defendant's contacts with the forum state provide the basis for the suit." *See Mitrano v. Hawes*, 377 F.3d 402, 406-07 (4th Cir. 2004) (citing *Carefirst of Md.*, 334 F.3d at 397). Where, as here, personal jurisdiction is premised on specific jurisdiction, the court must examine "(1) the extent to which the defendant purposefully availed [herself] of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.

6

2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1105 (2003).  Furthermore, "[a] defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over [her]; thus, to justify such an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" *Mitrano*, 377 F.3d at 407 (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4ᵗʰ Cir. 1997)).  The first factor, purposeful availment, is satisfied where a nonresident defendant purposefully has engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state. *Burger King Corp.*, 471 U.S. at 476.

The crucial issue is whether the defendant's contacts with the forum state of Maryland are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  A defendant has fair warning that it might be subject to a forum's jurisdiction if it purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  Where a nonresident defendant purposefully has engaged in significant activities within the forum

state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there – and thus, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476.

Defendant contends that her personal contacts with Maryland are insufficient to subject her to personal jurisdiction, and that shipment to Maryland of goods she manufactured and sold to an importer in El Salvador cannot be a basis for personal jurisdiction in Maryland.  Plaintiff does not dispute that Defendant has not personally traveled to Maryland, but asserts that repeated shipment of her products to Maryland, her extension of credit to a Maryland resident, and the registration of her business and products with federal agencies in the United States provide an adequate basis for personal jurisdiction in Maryland.

Plaintiff contends that Defendant either transacted business in Maryland under Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) or contracted to supply goods in Maryland under subsection (b)(2) because on at least two occasions she sold Super Vital Forte supplements to Mr. Carballo, who distributes these and other products from his business in Landover, Maryland.  Defendant's declarations indicate that Mr. Carballo purchased the supplements from her business in El Salvador and arranged to ship the products back to Maryland without the assistance of Defendant or her

employees.[1]  (Paper 12, Ex. 6, de Maron Decl., at 2).  Plaintiff
asserts several facts related to the transaction in an attempt to
refute this testimony.  Even resolving all disputed facts in
Plaintiff's favor, however, the evidence does not support any
inferences that would allow personal jurisdiction over Defendant in
Maryland, either under Maryland's long-arm statute or under the
minimum contacts analysis mandated by due process.

Plaintiff first asserts that the invoices for the sales from
Defendant to Mr. Carballo, (paper 27, Ex. 2), "have all of the
indicia of international sales from El Salvador to Landover,
Maryland."  (Paper 26, at 3).  The record does not support this
inference.  The invoices list Beauty Botanical's Distributor, at
its Landover, Maryland address, as the buyer (paper 27, Ex. 2), but
do not indicate any contractual obligation on the part of Defendant
to ship the supplements to that address.  Thus, the invoice does
not contradict Defendant's declaration statement that the sales
were made to Mr. Carballo in El Salvador, and that the subsequent
shipment to Maryland was independently arranged by Mr. Carballo.

These facts do not support personal jurisdiction under Md.
Code Ann., Cts. & Jud. Proc. § 6-103.  At most, Plaintiff can

---

[1] Mr. Carballo also submitted a declaration in this case.
Plaintiff sought to depose Mr. Carballo to test the statements
contained in his declaration, but has been unable to secure his
presence at a deposition.  As a result, the court previously issued
an Order directing that Mr. Carballo's declaration would not be
considered in the resolution of this issue.  (Paper 25).

demonstrate that Defendant knew that Super Vital Forte supplements purchased from her in El Salvador by Mr. Carballo were being shipped to, and distributed by him in, Landover, Maryland. Plaintiff relies on *Bahn v. Chicago Motor Club Insurance Co.*, for the proposition that transacting business in Maryland need not require a defendant's physical presence in the state.  In that case the defendant, a nonresident insurance company, transacted business in Maryland because it sent policy renewals to Maryland and accepted premium payments from Maryland.  *Bahn v. Chicago Motor Club Insurance Co.*, 98 Md.App. 559, 568-69 (Md.Ct.Spec.App. 1993). The court reasoned that under Maryland law, this activity was sufficient to support a finding that the renewal contract had been formed in Maryland.  *Id.*  In this case, however, Plaintiff has not made a *prima facie* showing that Defendant did anything more, with respect to Maryland, than repeatedly sell goods in El Salvador to a Maryland resident who arranged to return the goods to Maryland. The only business transaction Plaintiff completed with respect to the sale of supplements to Mr. Carballo was completed in El Salvador, not Maryland.

Plaintiff also argues that personal jurisdiction exists under Md. Code Ann., Cts. & Jud. Proc (b)(2), alleging that Defendant contracted to supply goods or services in Maryland.  The transaction between Defendant and Mr. Carballo cannot be interpreted as such a contract.  Defendant's uncontroverted

testimony indicates that any contract between Defendant and Mr. Carballo was only to supply him with supplements in El Salvador for his own transport back to Maryland.   One court has held that shipments of goods "F.O.B. Virginia" and "F.O.B. North Carolina" to a Maryland buyer subjected the seller to personal jurisdiction in Maryland subject to section 6-103(b)(2), but the court's analysis focused on the fact that, pursuant to the requirements of the Uniform Commercial Code, the seller was required to make arrangements with a common carrier for shipment of the goods to Maryland. *See Snyder v. Hampton Indus., Inc.*, 521 F.Supp. 130, 144 (D.Md. 1981).   In this case, Defendant insists that she did not contract to make, and did not make, similar shipping arrangements. The invoices submitted by Plaintiff do not contradict Defendant's assertion and do not create a factual dispute that could be resolved in Plaintiff's favor.

Plaintiff argues that Defendant extended credit to Mr. Carballo, or Beauty Botanical's Distribution, in Maryland because the terms of the sale listed on the invoices indicate that payment was to be made within fifteen days.   Defendant does not contest that payment after Mr. Carballo returned to Maryland would have been permissible under the invoice terms.   She stated in her supplemental declaration that "Combisa . . . merely gave [Mr. Carballo] 15 days to pay while he was in El Salvador.   Combisa had no knowledge whether Mr. Carballo would pay from El Salvador or

11

Maryland." (Paper 33, Ex. 4, at 2 ¶ 11). Extending credit to Mr.
Carballo with the expectation that he might pay after returning to
Maryland could, arguably, constitute transacting business or
contracting to supply a service in Maryland. This is not a proper
basis for personal jurisdiction in this case because section 6-
103(a) requires the cause of action to arise from the conduct
enumerated in subsection (b). Plaintiff's trademark infringement
cause of action does not arise from any extension of credit by
Defendant to Mr. Carballo, but rather from the distribution of
Super Vital Forte supplements in the United States.

Plaintiff also claims that Defendant purposefully availed
herself of Maryland law by registering as a manufacturer with the
United States Food and Drug Administration and by attempting to
register a trademark for Super Vital Forte with the United States
Patent and Trademark Office. Defendant has filed for trademark
registration of her Super Vital Forte supplements before the United
States Patent and Trademark Office, and this application remains
pending according to the record in this case. (Paper 27, Perez
Decl.; *id.*, Ex. 1; paper 32, at 1). Defendant has also registered
with the United States Food and Drug Administration as a
manufacturer of pharmaceutical products including dietary
supplements, as is required to import such products into the United
States. (Paper 27, Perez Decl.; *id.*, Ex. 2; paper 33, Ex. 4, at
2). Defendant admits that she registered with the Food and Drug

Administration in order to allow independent distributors, including Mr. Carballo, to bring her products to the United States. (Paper 33, Ex. 4, at 2).

While Defendant's actions with regard to her trademark and Food and Drug Administration registrations were purposefully directed toward the United States, there is no basis to conclude that these actions were directed toward Maryland. Plaintiff presents no basis for any conclusion that either federal registration bore any particular relation to Maryland such that it could constitute conducting business or contracting to supply goods in Maryland. As such, this is not a proper basis for this court to exercise personal jurisdiction over Defendant based on her contacts with the state of Maryland.

Finally, even if Maryland's long-arm statute were satisfied, personal jurisdiction would not be constitutional, because Plaintiff has not made a *prima facie* showing that Defendant's contacts with Maryland are sufficient to satisfy the requirements of due process. In determining whether personal jurisdiction comports with the Constitution, a court must consider "(1) the extent to which the defendant purposefully availed [herself] of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc.*, 293 F.3d at 712

13

(internal quotations omitted).  The United States Court of Appeals for the Fourth Circuit has also cautioned that "[w]hat 'is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather it is that the defendant's conduct and connection with the forum State are such that [s]he should reasonably anticipate being haled into court there.'"  *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658(4th Cir. 1989) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 295).

In *Federal Insurance Co.*, relied upon heavily by Defendant, the court reasoned that the out of state manufacturers of a ship and its cargo winch were not subject to personal jurisdiction in South Carolina in a products liability action regarding the winch's failure in that state.  *Id.* at 658-60.  The court reasoned that even if the defendants could foresee the possibility of the ship and winch eventually making its way to South Carolina, personal jurisdiction was not appropriate because the sale transaction and manufacturing took place outside the state, and the defendants lacked other contacts sufficient to justify personal jurisdiction. *Id.*  The court took into account the fact that the defendants advertised nationally including in publications distributed in South Carolina, but relied upon the defendants' lack of more significant contacts, related to the transaction from which the cause of action arose, with the forum state:

It is undisputed, for example, that [defendants] Lake Shore and Peterson do not maintain offices in South Carolina and are not licensed to do business in the state. Neither Lake Shore nor Peterson have agents, employees, or subsidiaries in South Carolina, and neither defendant maintains a bank account or owns real or personal property in the state. Although the record indicates that Lake Shore has made sales to South Carolina residents subsequent to the accrual of Federal's cause of action, all such sales have been initiated by the customer; they are not the result of sales efforts by Lake Shore in South Carolina. In addition, all products and materials sold to South Carolina residents have been shipped F.O.B. Michigan, and we agree with the district court that, cumulatively, Lake Shore's sales do not represent "significant activities" within the state. . . . Lake Shore and Peterson also do not directly advertise or solicit customers in South Carolina. Although Lake Shore is listed in the Thomas Register, a nationally distributed trade journal, such a listing, standing alone, does not confer personal jurisdiction.

*Id.* at 658-59.

Likewise, Plaintiff has not provided any evidence suggesting that Defendant maintains offices in Maryland, is licensed to do business in the state, has agents or employees in Maryland, owns real or personal property in the state, solicits orders in Maryland, or advertises within the state. Furthermore, Defendant's uncontroverted declaration that sales to Mr. Carballo were completed in El Salvador and that Mr. Carballo independently arranged shipment of the supplements to Maryland is similar to the

15

status of the cargo winch in *Federal Insurance Co.*, which was manufactured and sold in Michigan and foreseeably found its way to South Carolina through the actions of independent parties.

**B. Personal Jurisdiction Pursuant to Fed.R.Civ.P. 4(k)(2)**

Plaintiff asserts, as an alternative theory of personal jurisdiction, that this court has personal jurisdiction over Defendant pursuant to Fed.R.Civ.P. 4(k)(2). Plaintiff argues that Defendant does not have sufficient contacts with any state to justify the exercise of personal jurisdiction, but has sufficient contacts with the United States as a whole that the exercise of personal jurisdiction would not violate due process. The Fourth Circuit has explained a three-step analysis to determine whether personal jurisdiction under Fed.R.Civ.P. 4(k)(2) can properly be asserted: "[f]irst, the suit must arise under federal law. . . . Second, the defendant must not be subject to personal jurisdiction in any state. . . .  Third, the defendant must have contacts with the United States 'consistent with the Constitution and laws of the United States.'" *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005) (quoting Fed.R.Civ.P. 4(k)(2); citing *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 215 (4th Cir. 2002)), *cert. denied*, 127 S.Ct. 115 (2006).

Plaintiff has arguably met the first and third prerequisites for Fed.R.Civ.P. 4(k)(2) jurisdiction set out by the Fourth Circuit in *Saudi*. The case arises under federal trademark law. By

attempting to register a trademark for Super Vital Forte and obtaining United States Food and Drug Administration registration as a manufacturer of supplements in order to facilitate shipments of her products into the United States, Defendant arguably purposefully directed her activities toward the United States in a manner that justifies the exercise of personal jurisdiction. Plaintiff cannot satisfy the second step in this analysis, however, because Defendant expressly waives any objection to personal jurisdiction in Florida.  As a result, Plaintiff cannot meet its burden of making a *prima facie* showing that personal jurisdiction over Defendant would not be possible in any state other than Maryland, *see Tetrev v. Pride Int'l Inc.*, 465 F.Supp.2d 555, 562 (D.S.C. 2006); *Saudi v. Northrop Grumman Corp.*, 221 F.R.D. 452, 457-58 (E.D.Va. 2004), *aff'd*, 427 F.3d 271 (4th Cir. 2005)), because personal jurisdiction is now conclusively possible in Florida.

## IV.   Conclusion

For the foregoing reasons, Plaintiff has not made the necessary showing for the court to assert personal jurisdiction over Defendant, in part because Defendant has acknowledged that she would waive any objection to personal jurisdiction or venue in this case in the United States District Court for the Southern District of Florida.  (Paper 33, at 2).

A court may, in the interest of justice, transfer a case
instead of dismissing for lack of personal jurisdiction pursuant to
28 U.S.C. § 1406(a) where, as here, it is apparent that
jurisdiction in another district court would be proper. *In re
Carefirst of Md., Inc.*, 305 F.3d 253, 255-56 (4th Cir. 2002)
("Although its language suggests otherwise, section 1406(a) has
been interpreted to authorize transfers in cases where . . .
personal jurisdiction is lacking or some other impediment exists
that would prevent the action from going forward in that district."
(citing *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988)).
Neither party has explicitly requested transfer as an alternative
to dismissal, however, the court has authority to grant transfer
*sua sponte* when it is without personal jurisdiction over a case,
although the parties must be afforded an opportunity to be heard.
*See, e.g.*, *Miller v. Asensio*, 101 F.Supp.2d 395, 409 (D.S.C. 2000)
(citing *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986)).
Defendant asserted that the Southern District of Florida would be
an appropriate venue for this case in her reply brief, but may be
suggesting that earlier proceedings will or should bar litigation
there.  Plaintiff has not had an opportunity to be heard as to this
issue.  Therefore, Plaintiff will be directed to file a statement
within ten days as to whether it seeks transfer to the United
States District Court for the Southern District of Florida as an

alternative to dismissal for lack of personal jurisdiction.
Defendant may have ten days to file a response.  A separate Order
will follow.


                    _____/s/_____
                    DEBORAH K. CHASANOW
                    United States District Judge